UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                       S5 19 CR 536 (PKC)

       -against-                          OPINION AND ORDER

JASON MARTINEZ,

                    Defendant.
-----------------------------------------------------------x
CASTEL, U.S.D.J.

        Defendant Jason Martinez is charged in a superseding indictment with substantive Hobbs Act robbery, conspiracy to commit Hobbs Act robbery, brandishing a firearm during a drug trafficking crime, and two conspiracies to distribute narcotics. He now moves to exclude all evidence obtained pursuant to a warrant to search three cell phones recovered during his May 28, 2020 arrest, and to sever the second narcotics conspiracy charge of the indictment. According to Martinez, the warrant application lacked probable cause and was based on stale information, and the second narcotics conspiracy charge is unrelated and prejudicial. For the reasons explained below, the motion will be denied.

BACKGROUND

        The acts underlying the indictment stem from the May 2019 robbery of a drug trafficker's apartment in the Bronx. As the criminal complaint and warrant application set out, Martinez is accused of participating in the planning and execution of the robbery. (Doc 1 (Compl.) at ¶ 10.) During the robbery, an individual was struck in the head with a firearm. (Id. at ¶ 13f.) The robbers fled the apartment with several duffel bags each filled with cocaine. (Id. at ¶ 13h.) Surveillance video footage from outside of the apartment building showed one of the robbers placing a duffel bag into the backseat of a sedan with a Pennsylvania license plate before

escaping on foot. (Id. at ¶ 13i.)

After a review of law enforcement databases, it was determined that the sedan belonged to the wife of Martinez's codefendant, Deejay White. (Id. ¶ 14c.) White was the driver of the vehicle on one occasion in 2018, and it was parked outside of his home from at least July 2019 through November 2019. (Id. at ¶ 14c–d.) On November 25, 2019, White was arrested pursuant to a criminal complaint. (Id. at ¶ 15a.) During the arrest, law enforcement seized two of White's cell phones and subsequently searched those phones. (Doc 103 – Ex. A (Warrant Application) at 6, ¶ 15b.) The phones contained several texts with a number registered to Martinez and the contact name saved as "Jay My Bro 182." (Id. at ¶ 16a.) White and Martinez exchanged texts on the day before the robbery occurred. The texts indicated that White was outside of the apartment where the robbery was to take place. (Id. at ¶ 16b.) White sent Martinez a video of the street and front door of the apartment and asked him what to do next. (Id. at ¶ 16c.) Law enforcement believe that White was at the apartment to commit the robbery, but because of a delay in the cocaine shipment, he had to return home until the following day. (Id.) He and Martinez appeared to be working together.

Agents surveilled Martinez's home in the Bronx and observed him and others packaging a product inside of various vehicles. (Id. at ¶ 18a.) They also identified a car that he regularly drove and which was registered in his name. On May 27, 2020, license place readers revealed that Martinez was driving the car from New York to Florida. (Id. at ¶ 18b.) On May 28, 2020, the Hialeah Police Department arrested Martinez for attempting to purchase cocaine from a confidential source in Florida. (Id. at 18c.) Pursuant to a search warrant, his car was searched where police found $174,570 in a hidden compartment and $18,000 in a duffel bag. (Id. at ¶ 18d.) Evidence seized from the cell phones of two co-conspirators who were negotiating

this Florida transaction revealed that Martinez was scheduled to pick up $176,000 worth of cocaine from the confidential source. (Id. at ¶ 18i.) Martinez had three cell phones on his person, which are the subject of the warrant that he now attacks.

LEGAL STANDARD

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To prevent . . . 'general, exploratory rummaging in a person's belongings' and the attendant privacy violations,' the Fourth Amendment provides that 'a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity.' " United States v. Galpin, 720 F.3d 436, 445 (2d Cir.2013) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) and Kentucky v. King, 563 U.S. 452, 459 (2011)). "[A] warrant will issue only if: (1) the Government establishes probable cause to believe the search will uncover evidence of a specific crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized." United States v. Ganias, 755 F.3d 125, 134 (2d Cir. 2014) (citing Galpin, 720 F.3d at 445).

For a search warrant, probable cause is any information that indicates a "fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause cannot be "conclusory allegations in an affidavit; the warrant application must contain sufficient factual information for the judicial officer to make an independent probable cause determination." United States v. Christopher, 19 cr 875, 2020 WL 5518216, at *2 (S.D.N.Y. Sept. 13, 2020) (Swain, J) (citing United States v. Rutherford, 71 F. Supp. 3d 386, 392 (S.D.N.Y. 2014)). The factual information "must be

3

contained within the four corners of a written affidavit given under oath." United States v. Falso, 544 F.3d 110, 122 (2d Cir. 2008) (citation omitted). "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)).

DISCUSSION

      A. The Warrant Was
         Based on Probable Cause

Martinez first argues that the cell phone evidence should be suppressed because there was no probable cause to believe that information related to the Florida narcotics transaction would be found on the phones. This argument is meritless. The affidavit of Agent Claudio Flores, attached to the warrant application, lays out facts giving rise to probable cause. First, it details how Martinez used a cell phone while participating in a narcotics robbery in 2019. (Warrant Application at 7–9, ¶ 16.) Martinez texted White about the planned robbery, and White sent Martinez a video of the robbery location. Martinez continued using his cell phone for narcotics activity: a few months after the robbery, he called a co-conspirator to discuss storing money at a safe house. (Id. at 9, ¶ 17.) This safe house was the residence of Martinez's ex-spouse, and when officers searched the home, they found $250,000 in cash, believed to be narcotics proceeds. (Id. at ¶ 17f. )

With respect to the Florida drug transaction specifically, the affidavit sets out how two of Martinez's co-conspirators used cell phones to negotiate the purchase price of seven kilograms of cocaine for $176,000. (Id. at 11, ¶ 18d.) One of these co-conspirators told the confidential source that the buyer of the narcotics would be "coming down" from New York. (Id.) Officers then observed Martinez driving from New York to Florida to meet the co-conspirators and the supposed narcotics dealer. When Martinez was arrested, officers searched

4

his vehicle and found $18,000 in a duffel bag and $174,570 in a hidden compartment. (Id.) He had the three cell phones on his person. The Magistrate Judge had a basis to find probable cause to believe that these three phones had evidence of Martinez's planned drug transaction. His co-conspirators used their cell phones in arranging his arrival, and Martinez had a history of using cell phones in connection with narcotics activity. Moreover, Martinez had been negotiating a Florida-based drug transaction from his residence in New York. There was probable cause to believe that he had been using the cell phones to do so.

The affidavit detailed the types of information that narcotics conspirators usually have on their cell phones, and specifically outlined the information that the agent believed would be on Martinez's phones. (Id. at 13–14, ¶¶ 21–22.) This included contact information for others involved in narcotics activity, incoming and outgoing calls related to the transactions, historical location data, photographs and video related to the transactions, and communication with co-conspirators. (Id.) There was ample probable cause supporting the warrant application with respect to both narcotics conspiracy counts charged in the indictment.

Martinez also argues that the warrant application was based on stale information because the May 2019 robbery occurred one year before the May 2020 Florida transaction. This argument is also meritless. There is "no bright-line rule for staleness." Walczyk v. Rio, 496 F.3d 139, 162 (2d Cir. 2007). It depends "on the basis of the facts of each case." United States v. Martino, 664 F.3d 860, 867 (2d Cir. 1981). In this case, the warrant application sets out a pattern of activity. Martinez used his cell phone in connection with the May 2019 robbery. He again used a phone in November 2019 to facilitate storing narcotics proceeds at a safe house. A mere six months later, he engaged in additional narcotics activity when he was arrested in Florida. "Where the affidavit 'establishes a pattern of continuing criminal activity,' such that

5

'there is reason to believe that the cited activity was probably not a one-time occurrence,' the passage of time between the last alleged event and the warrant application is less significant." United States v. Raymonda, 780 F.3d 105, 114 (2d Cir. 2015) (quoting United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993). Based on the repeated criminal conduct here, there was no error in relying on the May 2019 robbery investigation as a source of evidence supporting the finding of probable cause.

### B. The Motion for Severance Is Premature

Martinez has also filed a motion to sever Count VI from the superseding indictment. He argues that this count, which is the narcotics conspiracy charge in connection with the Florida attempted narcotics purchase, is completely unrelated to the other charges in the indictment. Martinez believes that the inclusion of this additional narcotics conspiracy charge will unfairly prejudice him and lead to juror confusion. At this stage, his motion will be denied without prejudice to renew when the Court sets a schedule for motions in limine. As the Court stated in the March 23, 2021 conference, motions to sever "should be heard at the final pretrial conference" and "would be made on the same schedule as your in limine motions." (Doc 99 (3/23/2021 Tr.) at 11–13.)

CONCLUSION

For these reasons, Martinez's motion to suppress the evidence recovered pursuant to the warrant to search his cell phones is DENIED and his motion to sever Count VI of the indictment is DENIED WITHOUT PREJUDICE. The Clerk is directed to terminate the motions (Doc 98). The next conference in this matter will proceed as scheduled on July 21, 2021 at 11:00 A.M. in Courtroom 11D.

SO ORDERED.

_P. Kevin Castel_
P. Kevin Castel
United States District Judge

Dated: New York, New York
      May 11, 2021